38 December 24, 2025 No. 1107

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

PEOPLE FOR THE ETHICAL TREATMENT
OF ANIMALS, INC.,
a non-profit public benefit corporation,
*Plaintiff-Respondent,*

*v.*

OREGON HEALTH & SCIENCE UNIVERSITY,
a public corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CV15874; A180181

Andrew M. Lavin, Judge.

Argued and submitted May 12, 2025.

Misha Isaak argued the cause for appellant. Also on the briefs were Thomas R. Johnson, Alex Van Rysselberghe and Stoel Rives LLP.

Peter D. Hawkes argued the cause for respondent. Also on the brief was Angeli Law Group LLC.

Jayme Pierce filed the brief *amicus curiae* for League of Oregon Cities.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

The Oregon Public Records Law (OPRL), ORS 192.311 to 192.431, requires public bodies to respond to requests within a specific timeframe and allows the court to impose a $200 fine if it determines that there was "undue delay" in responding to the request. *See* ORS 192.324(2) (public body must either acknowledge receipt of a written public records request or complete the response to the request within five business days); ORS 192.329(5) (within 10 additional days, public body must either complete the response to the request or provide an estimate of when it will complete the response); ORS 192.407(3)(b) (allowing the court to impose a $200 fine if a public body responded to a request with "undue delay"). The question in this case is whether, in addition to that fine, ORS 192.407 authorizes an award of attorney fees.

The trial court imposed two $200 fines against defendant, Oregon Health & Science University (OHSU). It concluded that OHSU had responded to plaintiff People for the Ethical Treatment of Animals's (PETA's) public records requests with undue delay. In addition, the trial court awarded PETA $432,990 in attorney fees and $1,143 in costs. On appeal, OHSU raises three assignments of error, challenging the trial court's conclusion under ORS 192.407(3)(b) that it responded to PETA's public records requests with "undue delay," the trial court's award of attorney fees to PETA, and the amount of that award.

Although resolving this appeal would ordinarily require us to address the predicate issue of whether the trial court erred in finding, under ORS 192.407(3)(b), that OHSU responded to PETA's requests with "undue delay," we need not resolve that issue here. During oral argument, OHSU acknowledged that although it is challenging both the trial court's determination under ORS 192.407(3)(b) that it responded to PETA with undue delay and its attorney fee award, it would be amenable to us assuming without deciding that it responded to PETA with undue delay if we were to conclude that the trial court's attorney fee award to PETA constituted error. Because we agree with OHSU that the trial court erred in awarding PETA attorney fees under

various provisions of the OPRL and, alternatively, ORCP 46 D, we focus our analysis on that issue, and we assume—without deciding—that OHSU responded to PETA's requests with undue delay. Accordingly, we reverse and remand.

The facts underlying this appeal are undisputed. OHSU doctors Ryabinin and Walcott published an article in November 2017 about an experiment they conducted on prairie voles. The article was based on their analysis of videos documenting their experiment and microphotographs—images they created using a microscope to show brain tissue from the voles involved in the experiment. Their article included some of the microphotographs and explicitly referred to the videos. Although the videos were recorded on SD cards at the Veteran Affairs Medical Center (VAMC) pursuant to VAMC protocol, Ryabinin and Walcott downloaded and analyzed those videos on a single lab computer at OHSU.

That same month, PETA issued a press release criticizing Ryabinin's research in the article. Prior to the issuance of the press release, Ryabinin received requests from media outlets asking for photographs from the vole experiments. Ryabinin then asked the VAMC whether he could provide those outlets with the photographs, to which the VAMC responded, "[A]t this time no photography nor filming of the voles can be undertaken or used. This is due to security issues." Ryabinin subsequently instructed Walcott to delete the videos of their experiment from the OHSU lab computer. He did not instruct Walcott to delete the microphotographs. Walcott then took steps that he believed would result in the deletion of the videos from the computer. After Walcott took those steps, both he and Ryabinin believed that the videos of their research had been deleted.

Between January and August 2018, PETA served OHSU with three public records requests seeking documents from Ryabinin's research on animals, including the microphotographs and videos from the vole experiment. Following each request, OHSU sent PETA an acknowledgement of its receipt either the same or the next day. PETA ultimately retracted its first request upon learning that OHSU had not located any photos or videos related to the vole article. As for

the two remaining requests, after the acknowledgement, it took OHSU about a month to respond to each. In response to those requests, OHSU provided PETA with media related to other experiments Ryabinin and other researchers had conducted on animals, but none related to Ryabinin and Walcott's experiment on voles.

When none of its requests yielded any of the videos that were created for the vole article, PETA specifically asked OHSU's public records coordinator about them, noting that the article explicitly stated that portions of the experiment were videotaped. OHSU's public records coordinator followed up with Ryabinin about PETA's inquiry and he explained that, because the "experiments [were] performed at the [VAMC]," they were "property of [VAMC], not OHSU." Ryabinin further explained that because VAMC "does not allow [researchers] to distribute videos taken within the [VAMC]," the videos had been "destroyed after [they] published the paper." The coordinator then relayed that information to PETA, who submitted a public records request the next day to the VAMC asking for the microphotographs and videos from the vole experiments. The VAMC responded a few days later, stating that it did not have any responsive records.

Over a year and a half later, in April 2020, PETA petitioned the Multnomah County District Attorney under ORS 192.415(1)(a) for an order requiring OHSU to turn over materials that PETA identified in its third public records request, including "[c]opies of photographs and videos captured as part of the experiments" reported in Ryabinin and Walcott's article on voles. The district attorney denied the petition by taking no action. *See* ORS 192.418(1) (stating that "[t]he failure of the *** district attorney to issue an order under ORS 192.401, 192.411 or 192.415 denying, granting, or denying in part and granting in part a petition to require disclosure within seven days from the day of receipt of the petition shall be treated as an order denying the petition for the purpose of determining whether a person may institute proceedings for injunctive or declaratory relief under ORS 192.401, 192.411 or 192.415").

After the district attorney denied PETA's petition for review, PETA filed this action pursuant to ORS

192.415(1)(b)—which allows a court to review a public body's decision to deny the right to inspect any public record—and ORS 192.407—which allows a requester to seek review of a public body's failure to respond to a public records request or to challenge an unduly delayed response. In response to this lawsuit, OHSU searched for and located the lab computer that Ryabinin and Walcott had used. On June 16, 2020, OHSU gave the computer to a forensic analyst, who attempted to recover the deleted vole videos, but was unsuccessful.

Fourteen months into the litigation, PETA deposed Ryabinin. Ryabinin testified that he still had the microphotographs that were created in connection with his vole article and acknowledged that they were responsive to some of PETA's public records requests. However, he explained that, when he received those requests, he did not realize that they were responsive because he assumed that "PETA would be interested in animal videos rather than in [microphotographs]." Following Ryabinin's deposition, OHSU located and provided PETA with the microphotographs.

During the discovery process, PETA served OHSU with three separate documents containing a total of 36 requests for production (RFPs). In its second document, served on October 23, 2020, PETA included RFP No. 30, which sought, "[f]or inspection purposes, any hard drive, device, or storage medium on which the [vole] [v]ideos were stored at any point." In its response to RFP No. 30, served a month later on November 24, 2020, OHSU agreed to make the hard drives from the lab computer that Ryabinin and Walcott had used to analyze the vole videos available for inspection under a proposed protocol involving a mutually agreed-upon third-party vendor, with specified conditions governing access and disclosure. PETA subsequently filed a motion to compel production of materials responsive to all RFPs in its second document *except for* RFP No. 30 and noted in its motion that "the parties [were] in the process of negotiating a protocol by which PETA [would] conduct a forensic examination of the hard drive on which OHSU stored the videos before their deletion." Nearly a year later, on September 8, 2021, PETA emailed OHSU saying it would

"like to move forward" or "confer" on its discovery request regarding the lab computer's hard drives. After further exchanges, the parties agreed on an inspection protocol, and OHSU provided the lab computer's hard drives to PETA on September 28, 2021.

After acquiring the hard drives, PETA's digital forensics expert conducted a search of its contents and located the vole videos that PETA believed to be responsive to its public records requests. Most of the videos were located in Desktop folders. Thus, contrary to Walcott and Ryabinin's belief, the vole videos had never been fully deleted from the lab computer, and copies of the videos had been available on the computer throughout all of PETA's public records requests and the ensuing legal proceedings. After discovering that the vole videos still existed, PETA moved for discovery sanctions under ORCP 46.

During the inspection of the lab computer hard drives, PETA's digital forensics expert also found that an external hard drive had once been connected to the lab computer, and PETA subsequently requested OHSU produce that external hard drive. OHSU had Ryabinin search for and locate the external hard drive, but he was unable to access any of its contents because they were encrypted. OHSU's IT engineer successfully decrypted the hard drive on February 11, 2022, and OHSU delivered the decryption key and the drive's contents to PETA on February 12, 2022, two days before trial was scheduled to begin. The contents of the external hard drive included copies of some of the vole videos from the lab computer hard drives and other videos, but none of the new, previously unseen videos on the external hard drive were videos from the vole experiment.

Following a bench trial, the trial court found in part for PETA on the two claims that it had brought pursuant to ORS 192.407(3)(b) for failure to respond or timely respond to its public records request for the videos and microphotographs. More specifically, the court found that "[t]he delay between when [PETA] originally requested the [videos and photos] and the time that defendant finally disclosed them was both 'undue' as that term is used in ORS 192.407(3)(b) and 'unreasonable' as that term is used in ORS 192.329(1)."

Accordingly, the trial court imposed the $200 fine set forth in ORS 192.407(3)(b) against OHSU on each claim.

In addition to assessing those fines, the trial court also awarded PETA costs and attorney fees. The court reasoned that a "plaintiff who prevails under ORS 192.407 is—by the express terms of subsection (4) of that statute—entitled to costs, disbursements, and attorney fees pursuant to ORS 192.431(3)."

The trial court also granted PETA's motion for discovery sanctions with respect to its first claim regarding the vole videos under ORCP 46 D. More specifically, the court concluded that the "same unreasonable delay in the disclosure of the [vole] videos extended into the duration of this case and was, therefore, also a failure on defendant's part to comply with its discovery obligations." In the court's view, that sanction provided a "separate and alternative basis from ORS 192.431(3)" for its attorney fee award.

On appeal, OHSU challenges the trial court's attorney fee award, arguing that the trial court erred in awarding costs and attorney fees to PETA under the OPRL—specifically under, ORS 192.407 and ORS 192.431(3)—and alternatively as a discovery sanction under ORCP 46 D. We begin with OHSU's argument that the trial court erred in awarding attorney fees under the OPRL and then separately address OHSU's argument that the trial court erred in awarding attorney fees as a discovery sanction under ORCP 46 D. As to both arguments, we agree with OHSU that the trial court erred in awarding PETA attorney fees.

With respect to OHSU's arguments under the OPRL, we understand OHSU to argue that the text of ORS 192.407(3)(b) does not authorize the court to award attorney fees when it determines that a public body responded to a public records request with undue delay. In addition, OHSU contends that the legislative history further reflects that the legislature intentionally chose not to authorize attorney fee awards to prevailing parties under that statute. In response, PETA contends that the trial court did not err in awarding it costs, disbursements, and attorney fees because ORS 192.407(2) and (4) expressly "preserve[s] a trial court's

authority to award attorney fees under ORS 192.431," and "[n]othing in the legislative history of ORS 192.407(3)(b) suggests otherwise."

The issue before us is solely one of law. We therefore review the court's decision to award PETA attorney fees under the OPRL for legal error. *See Johnson v. O'Malley Brothers Corp.*, 285 Or App 804, 812, 397 P3d 554, *rev den*, 362 Or 300 (2017) ("[L]egal determinations with respect to entitlement to attorney fees [are reviewed] for errors of law." (Internal quotation marks omitted.)). Further, because "[t]he legal issue before us is primarily one of statutory construction," we apply "our usual method of statutory construction, considering the text and context of the relevant statutes and any relevant legislative history we find helpful." *Mantle v. SAIF*, 330 Or App 8, 14, 542 P3d 889 (2024) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)).

We begin by discussing in general terms the statutes whose intersection creates the issue before us. The OPRL creates a procedure through which members of the public can request and inspect documents from public bodies. *See City of Portland v. Bartlett*, 369 Or 606, 610-11, 509 P3d 99 (2022). As part of that procedure, when a requester initiates a public records request, the public body is required to acknowledge receipt within five business days after receiving the request and, within an additional 10 business days, either complete its response to the public records request or provide a reasonable estimated date by which the public body expects to complete its response. ORS 192.324(2) (requiring a public body to acknowledge receipt of a written public records request within five business days); ORS 192.329(5) (requiring a public body, within 10 additional business days, to "[c]omplete its response to the public records request" or provide a "reasonable estimated date by which the public body expects to complete its response").

Once a person or entity has initiated a public records request with a public body, the OPRL allows that requester to "seek review of the public body's actions by petitioning [the designated decisionmaker] for review at various points." *Merrick v. City of Portland*, 313 Or App 647, 656-57, 496 P3d 1085 (2021). For example, under ORS 192.411(1), if

a public body "denie[s] [a requester] the right to inspect or to receive a copy of any public record," then the requester may "petition the Attorney General to review the public record to determine if it may be withheld from public inspection." If its petition with the Attorney General is unsuccessful, then the requester may "institute proceedings for injunctive or declaratory relief" in court to compel disclosure. ORS 192.411(2). Under ORS 192.431(3), a requester who prevails in such a suit may recover costs and attorney fees.

In contrast to the statutes above, which permit review after a public body has denied access to records, ORS 192.407—the statute at issue in this case—allows a requester to seek review earlier in the process, when the requester believes that "the public body has failed to respond [to a request] as soon as practicable or without unreasonable delay." *Merrick*, 313 Or App at 657 (citing ORS 192.329(1) and ORS 192.407(1)(a) - (b)). More specifically, paragraphs (1)(a) and (b) of ORS 192.407 authorize a requester to petition for review when a public body fails to provide a timely response or when the requester believes that the body's estimated timeline for completing the response is unreasonably long and would unduly delay disclosure. Paragraph (1) (c) extends that right to "[a]ny other instance in which the [requester] believes that the public body has failed to comply" with its duties to process a request.

Subsection (2) outlines the decisionmaker's authority in reviewing these kinds of petitions, explaining that "[e]*xcept as provided in subsection (3) of this section*, the Attorney General, the district attorney and the court have the same authority with respect to petitions under this section as when inspection of a public record is denied." ORS 192.407(2) (emphasis added). Subsection (3) then provides forms of relief a decisionmaker is authorized to order when it grants a petition filed under this section. ORS 192.407(3). If the Attorney General, district attorney, or court grants a petition filed under ORS 192.407, then it may:

- "[R]equire disclosure of nonexempt material responsive to the request within seven days, or within any other period that the [decisionmaker] concludes is appropriate,"

- "[R]equire the public body to pay a penalty of $200 to the requester if the [decisionmaker] determines that the public body responded to the request with undue delay or failed to respond to the request," and

- "[O]rder a fee waiver or a fee reduction if a public body has responded to the request with undue delay or has failed to respond to the request in the time and manner prescribed in ORS 192.329."

ORS 192.407(3)(a) - (c). Subsection (4) states that "[n]othing in this section limits the authority of a court to act under ORS 192.431." ORS 192.407(4).

As noted, the parties in this case dispute whether attorney fees are available under ORS 192.407. In examining the text and context of ORS 192.407, the parties' dispute centers on whether subsection (3) of ORS 192.407 sets out an exclusive remedial scheme for petitions alleging delay, or whether those remedies are nonexclusive and supplemented by the court's authority under ORS 192.431. As set out above, subsection (3) authorizes courts to grant specific relief in delay cases, including issuing an order requiring the public body to disclose nonexempt records within seven days (or another appropriate time), imposing a $200 penalty against the public body, or ordering a fee waiver or fee reduction. The statute does not, however, mention attorney fees. OHSU views the omission of an attorney fee provision in subsection (3)—particularly when compared to ORS 192.431(3), which expressly authorizes such awards in denial cases— as a deliberate choice to limit remedies for delay to those enumerated in ORS 192.407(3)(a) to (c). On that reading, subsection (3) is exclusive, and the absence of fee language reflects legislative intent to withhold that remedy in this context. In OHSU's view, this reading is reinforced by the "except as provided in subsection (3)" qualifier in subsection (2), which states in full that, "[e]xcept as provided in subsection (3) of this section, the Attorney General, the district attorney and the court have the same authority with respect to petitions under this section as when inspection of a public record is denied." Under OHSU's reading of the statute, that language suggests that subsection (3) modifies or limits the "same authority" otherwise available in denial cases.

Subsection (4) complicates that picture. It provides: "Nothing in this section limits the authority of a court to act under ORS 192.431." OHSU reads this as a savings clause, included to prevent any overlap between ORS 192.407 and ORS 192.431 from being misinterpreted as a repeal or amendment of ORS 192.431, which was enacted earlier than ORS 192.407. Under that view, subsection (4) ensures that denial-based petitions filed under ORS 192.431 remain unaffected by the procedural pathway created in ORS 192.407, even where the two statutes' remedies are similar but not identical. For example, ORS 192.407(3)(a) authorizes courts to require disclosure of nonexempt material responsive to a public records request within seven days or another appropriate time, while ORS 192.431(1) authorizes courts to enjoin the public body from withholding records and to order production of any improperly withheld records without imposing a specific deadline. Without subsection (4), OHSU contends that a reader might mistakenly conclude that the later-enacted ORS 192.407 implicitly narrowed or superseded ORS 192.431. In OHSU's view, subsection (4) thus preserves the remedial scheme of ORS 192.431 for cases filed under that statute but does not import its attorney fee provision into delay cases under ORS 192.407.

PETA, by contrast, interprets subsection (4) more broadly. In PETA's view, subsection (4) preserves the court's full authority under ORS 192.431 in any proceeding brought under ORS 192.407, including the authority to award attorney fees. On this reading, subsection (3) lists available remedies but does not foreclose others, meaning that a petitioner could secure both the expedited remedies of ORS 192.407(3) and the fee-shifting remedy of ORS 192.431(3) for the same delay-based conduct by the public body. From PETA's perspective, the statutory text does not explicitly say that subsection (3) is exclusive, and the cross-reference in subsection (4) signals an intent to keep all of ORS 192.431's remedial tools in play for delay-based cases. As for subsection (2), PETA reads that text as imposing the "same authority" language wholesale—bringing with it every remedial power granted in ORS 192.431, including fee-shifting.

We first consider the text of ORS 192.407 in context. Looking solely at the text in context, we tend to agree with OHSU's reading of ORS 192.407(3) as a self-contained remedial scheme and ORS 192.407(4) as a savings clause to protect the earlier statute from implied amendment. That interpretation seems to us to be the more natural reading of the text. To the extent that there is room for disagreement on that point, however, we find the legislative history to be particularly useful in confirming the legislative intent regarding attorney fee awards in delay cases.

The legislative history of ORS 192.407 supports the conclusion that the legislature did not intend to authorize attorney fees for petitions brought under that section. ORS 192.407(3)(b) was enacted through House Bill (HB) 2353 in 2019. As originally introduced, HB 2353 would have allowed the court to impose "a penalty *** to the requester, plus reasonable attorney fees," if a public body responded to a request with undue delay or failed to respond altogether. However, during the legislative process, the bill was amended to remove the attorney fee provision. HB 2353 (2019), -4 amendments (Apr 2, 2019); *see* Audio Recording, Senate Committee on Business and General Government, HB 2353, May 14, 2019, at 13:19 (comments of Tyler Larson, Analyst from the Legislative Policy and Research Office), https://olis.oregonlegislature. gov (accessed Dec 16, 2025) (clarifying that the reasonable attorney fee provision of HB 2353 was "amended out"); *see* Testimony, Senate Committee on Business and General Government, HB 2353, May 14, 2019 (statement of Nick Budnick, Board Member of the Oregon Territory Chapter of the Society of Professional Journalists) (stating that the "current version of the bill does not allow for attorney fees to be paid to the requester").

OHSU relies on this legislative history to argue that the legislature made a "deliberate policy choice" to exclude attorney fees from ORS 192.407. OHSU's position is that the legislature considered, but ultimately rejected, attorney fees as a remedy for undue delay in responding to a public records request.

In response, PETA contends that OHSU's interpretation of the legislative history fails to account for a critical development. PETA points out that when the legislature removed the original attorney fee provision from HB 2353, it simultaneously added what is now ORS 192.407(4)—the provision stating that "[n]othing in this section limits the authority of a court to act under ORS 192.431." In PETA's view, this shows that, although the legislature did not intend to allow the attorney general or district attorneys to award attorney fees in delay-based cases, the legislature did intend to retain the ability for courts to award attorney fees in such cases.

As support for its position, PETA points to testimony from a representative of the Oregon District Attorney Association in a House Committee on Judiciary hearing who expressed concern about the fact that HB 2353, as originally introduced, allowed district attorneys to award attorney fees. In particular, the district attorney representative expressed concern that allowing district attorneys to award attorney fees could chill agency candor and slow the review process. Testimony, House Committee on Judiciary, HB 2353, Mar 13, 2019 (statement of Jeffrey Nitschke, Representative of the Oregon District Attorneys Association). Thus, PETA contends that the legislature's concern was about district attorneys—not courts—awarding attorney fees, and that this concern motivated the legislature to place attorney fee authority solely with the courts through its addition of subsection (4).

Although PETA's interpretation pulls some support from the legislative history, OHSU's interpretation of the legislative history—that the legislature deliberately chose not to allow attorney fees in ORS 192.407 petitions at all—is more persuasive. The most persuasive evidence of the legislature's intent comes from the testimony of Tyler Larson, an Analyst from the Legislative Policy and Research Office, during a public hearing before the Senate Committee on Business and General Government on May 14, 2019. At that hearing, Larson initially introduced HB 2353 and described the house bill as allowing "the attorney general, a district attorney, or a court to require a public

body to pay a $200 penalty to the requester, plus reasonable attorney fees, if the attorney general, district attorney, or court determined that the public body responded to the request with undue delay or failed to respond to the request." Audio Recording, Senate Committee on Business and General Government, HB 2353, May 14, 2019, at 07:40 (comments of Tyler Larson, Analyst from the Legislative Policy and Research Office) https://olis.oregonlegislature. gov (accessed Dec 16, 2025). However, later in the hearing, Larson corrected himself, stating, "Apologies, I need to correct myself for the record here. I said that [HB 2353] included reasonable attorney fees; that was amended out, and that is not included in the dash A version of the bill." *Id.* at 13:19. In response, the bill's proponent, Representative Karin Power, confirmed Larson's statement, agreeing that the allowance for attorney fees had been removed from the bill. *Id.* at 13:25.

Further confirming that understanding, Nick Budnick, a board member of the Society of Professional Journalists who also testified at the same hearing, submitted written testimony stating that "[t]he current version of the bill does not allow for attorney fees to be paid to the requester." Testimony, Senate Committee on Business and General Government, HB 2353, May 14, 2019 (statement of Nick Budnick, Board Member of the Oregon Territory Chapter of the Society of Professional Journalists). Budnick's testimony indicates that the stakeholders engaged with HB 2353 at the time it was being considered likewise understood that the legislature had deliberately amended the bill to exclude attorney fees.

Taken together, the relevant legislative history demonstrates that the legislature considered, but ultimately rejected, authorizing attorney fees under HB 2353. That deliberate decision undermines PETA's interpretation and supports the conclusion that the legislature did not intend to permit attorney fees for ORS 192.407 petitions.

In sum, the statutory text in context and the legislative history of ORS 192.407 is consistent with OHSU's interpretation that the legislature did not intend to allow attorney fee awards in petitions filed under that statute.

As such, we conclude that the remedies in ORS 192.407(3) are limited and self-contained, and that the savings clause in subsection (4) does not expand those remedies. Attorney fees are available in denial-based actions governed by ORS 192.431, and the legislature made a deliberate choice not to provide that remedy for petitions alleging failure to respond or undue delay under ORS 192.407. For those reasons, the trial court erred in awarding PETA attorney fees and costs under ORS 192.407 and ORS 192.431(3).

We now turn to the trial court's alternative basis for awarding PETA attorney fees. In addition to awarding PETA attorney fees under ORS 192.407, the trial court granted PETA's motion for discovery sanctions and awarded PETA attorney fees under ORCP 46 D. In granting that motion, the court explained that its award under ORCP 46 D provided a "separate and alternative basis" from its award under ORS 192.407 and ORS 192.431(3). The court justified its award of attorney fees as a discovery sanction because it concluded that the "same unreasonable delay in the disclosure of the [vole] videos" that violated the public records law "extended into the duration of this case and was, therefore, also a failure on defendant's part to comply with its discovery obligations." The court further concluded that "[t]he delay between plaintiff's request for production and defendant's eventual disclosure of the vole videos" constituted a discovery violation. OHSU now challenges the trial court's attorney fee award under ORCP 46 D.

We review for legal error whether the trial court had the authority to impose a sanction. *Laack v. Botello*, 314 Or App 268, 271, 498 P3d 839 (2021). If that authority existed, we review the trial court's decision to impose the sanction for abuse of discretion. *Burdette v. Miller*, 243 Or App 423, 430-31, 259 P3d 976 (2011). We review the court's factual findings underlying its decision to determine whether they are supported by legally sufficient evidence. *Warren v. Cieri Management Inc.*, 344 Or App 1, 2, ___ P3d ___ (2025).

ORCP 46 D authorizes a trial court to require a party or attorney to pay the reasonable expenses, including attorney fees, caused by the party's failure to (1) appear for a deposition or (2) "comply with or to serve objections

to a request for production or inspection submitted under [ORCP] 43,[1] after proper service of the request." ORCP 46 D applies "unambiguously" only in those two circumstances; courts may not expand the scope of ORCP 46 D to cover conduct that does not fall within its express terms. *See Markstrom v. Guard Publishing Co.*, 315 Or App 309, 315, 501 P3d 71 (2021), *rev den*, 369 Or 675 (2022) (rejecting a trial court's attempt to impose sanctions for a party's pre-litigation deletion of emails).

Initially, to the extent that the court relied on OHSU's violation of the OPRL—that is, the delay that led to the filing of this action—when it reasoned that the violation "extended into" the litigation, we note that a violation of the OPRL is not the same as a discovery violation. The OPRL and the discovery rules operate under separate legal frameworks, with different purposes, procedures, and enforcement mechanisms. *Compare* ORS 192.314(1) (stating that, under the OPRL, "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise" provided by statute), *with* ORCP 36 B(1) (permitting discovery of "any matter, not privileged, that is relevant to the claim or defense" of any party). A failure to comply with the OPRL, without more, does not establish a discovery violation under ORCP 46 D.

As noted, in determining that OHSU failed to comply with a request for production made pursuant to ORCP 43, the court relied on the "delay between plaintiff's request for production and defendant's eventual disclosure of the vole videos." Although the court did not specify which request for production it was referring to, given that the court referenced "videos," and given that PETA obtained the vole videos upon inspection of the OHSU lab computer's hard drives, we understand the court to have relied on RFP No. 30, which requested production, "[f]or inspection purposes, [of] any hard drive, device, or storage medium on which the [vole] [v]ideos were stored at any point." We also understand

---

[1] ORCP 43 B details the requirements for serving and responding to a request for production that asks to "inspect and copy any designated documents *** or to inspect and copy, test, or sample any tangible things that constitute or contain matters within the scope of [ORCP] 36 B and that are in the possession, custody, or control of the party on whom the request is served." ORCP 43 A(1).

that, when the court referred to "defendant's eventual disclosure" of the videos, it meant the disclosure that took place when PETA's forensic expert examined the OHSU lab computer's hard drives.[2]

A court may impose a sanction under ORCP 46 D when a party has failed to "comply with or to serve objections to a request for production or inspection submitted under [ORCP] 43, after proper service of the request." Thus, here, we understand the court to have found that OHSU failed to comply with or serve objections to RFP No. 30. As we will explain, in our view, the evidence in the record does not support that finding.

The relevant facts are as follows; we draw any available inferences in favor of the trial court's ruling. *Warren*, 344 Or App at 2. OHSU timely responded to RFP No. 30. *See* ORCP 43 B(2) ("[W]ithin 30 days after service of a request in accordance with subsection B(1) of this rule, or such other time as the court may order or to which the parties may agree in writing, a party must serve a response."); *see also* ORCP 10 (addressing computation of time under the Oregon Rules of Civil Procedure). Approximately 10 months elapsed between that response and OHSU's production of the lab computer's hard drives. Despite that time gap, however, the evidence in the record does not support the court's determination that OHSU failed to comply with ORCP 43's requirements with respect to RFP No. 30. In its timely response to RFP No. 30, OHSU specifically agreed to produce the hard drives for PETA's inspection but objected to doing so unless PETA agreed to a sufficient inspection protocol. That response sufficiently identified the reason for OHSU's objection to the immediate production of the hard drives. *See* ORCP 43 B(2)(a), (d) (requiring a response to include "a statement that, except as specifically objected to, any requested item within the party's possession or custody is provided, or will be provided or made available within the time allowed and at the place and in the manner specified in the request" or "any objection to a request or a part thereof

---

[2] To any extent that the court intended to award fees under ORCP 46 D based on OHSU's failure to produce the external hard drive identified by PETA's forensic expert until two days before trial, in our view, that intention does not appear to us from the record. On remand, the court may consider that question.

and the reason for each objection"). When PETA later filed its Motion to Compel for the Second Request for Production on December 11, 2020, it specifically left out RFP No. 30 alone, noting that "the parties are in the process of negotiating a protocol by which PETA will conduct a forensic examination of the hard drive on which OHSU stored the videos before their deletion." Finally, when PETA emailed OHSU several months later asking about RFP No. 30 and other outstanding discovery, OHSU responded a week later with another proposed inspection protocol that PETA subsequently agreed to. Thus, notwithstanding that 10 months elapsed between PETA's request for production and OHSU's production of the hard drives, the record does not support a determination that OHSU failed to "comply with or to serve objections to a request for production or inspection submitted under [ORCP] 43." ORCP 46 D. OHSU offered to comply with RFP No. 30, subject to an inspection protocol to be agreed upon between the parties (that is, to the extent that no inspection protocol existed to protect confidential information, OHSU objected to production); the parties negotiated a protocol; and OHSU produced the hard drives.

In sum, the record does not support the trial court's implicit finding that OHSU failed to produce the lab computer hard drives in compliance with PETA's RFP No. 30. Thus, the trial court erred in finding that OHSU had violated its discovery obligations with respect to those hard drives and in imposing a sanction of attorney fees under ORCP 46 D. Because it is not clear whether any award of fees that the court might make on remand regarding disclosure of the external hard drive would be for the same amount, we do not reach the third assignment of error, regarding the amount of fees. We do note, however, that any amount of attorney fees awarded as a sanction under ORCP 46 D is limited to those fees "caused by the failure" to comply with the requirements of ORCP 43.

Reversed and remanded.